IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| HELEN TERRY, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )    Case No. 1:20-cv-1001-SMD |
| | ) |
| KILOLO KIJAKAZI, | ) |
| *Acting Commissioner of Social Security*, | ) |
| | ) |
|    Defendant. | ) |

**OPINION & ORDER**

Plaintiff Helen Terry ("Terry") filed for a period of disability and disability insurance benefits ("DIB") on May 18, 2016, alleging she became unable to work beginning November 1, 2012. Terry's application was denied at the initial administrative level. She then requested and received a hearing before an Administrative Law Judge ("ALJ"), who found that Terry was not disabled. Terry appealed the ALJ's decision to the Social Security Appeals Council ("Appeals Council"), which granted review and remanded back to the ALJ, who held a second hearing. The ALJ again issued an unfavorable decision, and Terry appealed that decision to the Appeals Council, which denied review. Consequently, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Terry now appeals that decision under 42 U.S.C. § 405(g). For the reasons that follow, the

undersigned AFFIRMS the Commissioner's decision.[1]

## I. STATUTORY FRAMEWORK

The Social Security Act establishes the framework for determining who is eligible to receive Social Security benefits. *Martin v. Sullivan*, 894 F.2d 1520, 1530 (11th Cir. 1990). In making a benefits determination, an ALJ employs a five-step process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or medically equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a); 20 C.F.R § 416.920(a)(4). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of not disabled." *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[2] A claimant bears the burden of proof through step four. *See Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996). The burden shifts to the Commissioner at step five. *Id.*

To perform the fourth and fifth steps, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th

---

[1] Under 28 U.S.C. § 636(c), the parties have consented to the undersigned Chief United States Magistrate Judge conducting all proceedings and entering final judgment in this appeal. Pl.'s Consent (Doc. 8); Def.'s Consent (Doc. 9).

[2] *McDaniel* is a SSI case. SSI cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 875 n.* (11th Cir. 2012) (per curiam) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

Cir. 2004). A claimant's RFC is what the claimant can still do—despite her impairments—based on the relevant evidence within the record. *Id.* The RFC may contain both exertional and non-exertional limitations. *Id.* at 1242-43. Considering the claimant's RFC, the ALJ determines, at step four, whether the claimant can return to past relevant work. *Id.* at 1238. If a claimant cannot return to past work, the ALJ considers, at step five, the claimant's RFC, age, education, and work experience to determine if there are a significant number of jobs available in the national economy the claimant can perform. *Id.* at 1239. To determine if a claimant can adjust to other work, the ALJ may rely on (1) the Medical Vocational Guidelines ("Grids")[3] or (2) the testimony of a vocational expert ("VE").[4] *Id.* at 1239-40.

## II.   STANDARD OF REVIEW

A federal court's review of the Commissioner's decision is limited. A court will affirm the Commissioner's decision if the factual findings are supported by substantial evidence and the correct legal standards were applied. *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)). A court may reverse the Commissioner's final decision when it is not supported by substantial

---

[3] Grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. *See* 20 C.F.R. pt. 404 subpt. P, app. 2. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

[4] A vocational expert is an "expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips*, 357 F.3d at 1240.

evidence or the proper legal standards were not applied in the administrative proceedings. *Carnes v. Sullivan*, 936 F. 2d 1215, 1218 (11th Cir. 1991). A court is required to give deference to factual findings, with close scrutiny to questions of law. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145 (11th Cir. 1991).

"Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Despite the limited nature of review, a court must scrutinize the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986). However, a court may not decide the facts anew or substitute its judgment for that of the Commissioner. *Cornelius*, 936 F. 2d at 1145.

### III.   ADMINISTRATIVE PROCEEDINGS

Terry was thirty-seven years old on her alleged onset date and forty-three years old on the date she was last insured. Tr. 204. She has an associate's degree and past work as a security officer. Tr. 79, 80. Terry alleges disability due to multiple medical issues, including diarrhea, sleep apnea, asthma, congestive heart failure, irritable bowel syndrome, obsessive-compulsive disorder, cardiomyopathy, depression, anxiety, gastroesophageal reflux disease, hypothyroidism, and esophagitis. Tr. 415.

In the administrative proceedings before the Commissioner, the ALJ made the following findings with respect to the five-step evaluation process for Terry's disability

determination. At step one, the ALJ found that Terry did not engage in substantial gainful activity from her alleged onset date through her date last insured. Tr. 19. At step two, the ALJ found that Terry suffers from the following severe impairments: "degenerative joint disease, degenerative disc disease, bladder cancer, history of left fibula fracture, eosinophilic esophagitis, gastroesophageal reflux disease, irritable bowel syndrome, asthma, sleep apnea, hypersomnia, obesity status post bariatric surgery, diabetes mellitus, affective disorder, and anxiety disorder[.]" Tr. 20. At step three, the ALJ found that, through her date last insured, Terry "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments[.]" Tr. 21.

> The ALJ proceeded to determine Terry's RFC, articulating it as follows:
>
> [T]he claimant had the residual functional capacity to perform a reduced range of light work . . . except she cannot reach overhead with the dominant arm; must avoid concentrated exposure to heat, pulmonary irritants, heights, and hazards; is limited to work in an indoor climate controlled work setting with access to a restroom; and is limited to simple, routine tasks, no direct interaction with the general public, no production-paced work, and gradual change in a routine work setting.

Tr. 23. At step four, the ALJ found that, through her date last insured, Terry was unable to perform any past relevant work. Tr. 29. At step five, the ALJ utilized the testimony of a VE and determined that "considering [Terry's] age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that [Terry] could have performed." Tr. 29. Those jobs included "router"; "coffee roaster helper"; and "night cleaner." Tr. 30. Accordingly, the ALJ concluded that Terry was not

under a disability at any time from her alleged onset date through the date she was last insured. Tr. 31.

## IV.   ANALYSIS

Terry argues that the Commissioner's decision should be reversed for two reasons. First, Terry contends that the ALJ's RFC determination was not based on substantial evidence. Pl.'s Br. (Doc. 19) pp. 16-19. Second, Terry argues that the ALJ improperly applied the pain standard. *Id.* at 19-21. As explained below, Terry's arguments fail.

### A.  Substantial Evidence Supports the ALJ's RFC Determination

Terry argues that the ALJ erred in formulating her RFC because the RFC omits an absenteeism limitation, which she claims is contrary to the medical evidence. *Id.* at 16-19. Specifically, Terry asserts that the RFC determination is inconsistent with the opinion of Dr. McDowell, Terry's treating physician, who opined that Terry would be absent from work approximately two days per month. *Id.* at 17-18. Terry also claims that the RFC is contrary to her medical records reflecting three hospitalizations and multiple scheduled treatments because those records suggest that she would have monthly absences from work not accounted for in the RFC. *Id.* at 18-19. Terry contends that the ALJ's failure to provide reasons for omitting the possibility of absenteeism in the RFC warrants remand. *Id.* at 19.

The RFC is defined as the most a claimant "can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1). The ALJ has the responsibility of assessing a claimant's RFC at the hearing level. 20 C.F.R. § 404.1546(c). To determine a claimant's RFC, the ALJ considers all of the relevant evidence of record as to what the claimant can do in a work

setting despite any physical, mental, or environmental limitations caused by the claimant's impairments and related symptoms such as pain. 20 C.F.R. §§ 404.1545(a)(1), (3); *Ramos v. Comm'r of Soc. Sec.*, 2021 WL 960688, at *6 (M.D. Fla. Mar. 15, 2021) (in determining the RFC, the ALJ is required "to consider all of the medical and other evidence of record"). This includes evidence such as the claimant's medical history; medical signs and findings; medical source statements; effects of treatment, such as the frequency of treatment, duration, and disruption to routine; reports of daily activities; evidence from attempts to work; recorded observations; the effects of symptoms; any measures the claimant uses or has used to relieve pain or symptoms; and any other factors concerning the claimant's functional limitations and restrictions. Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (S.S.A. 1996); *see also* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 404.1545(a)(3). Importantly, in formulating the RFC, an ALJ is not required to refer to every piece of evidence, provided that the ALJ provides sufficient reasoning for the reviewing court to evaluate whether the ALJ considered the claimant's medical condition as a whole. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1326 (11th Cir. 2021) ("So long as the ALJ's decision demonstrates to the reviewing court that it considered the claimant's medical condition as a whole, the ALJ is not required to cite every piece of evidence in the record.").

Here, Dr. McDowell, who was Terry's treating physician, opined that Terry would be absent from work "about two days per month." Tr. 236. The ALJ afforded Dr. McDowell's opinion "little weight" based on internal inconsistencies in the form she

completed.[5] Tr. 28. When medical opinions are afforded little weight, the portions of the opinion that are inconsistent with the RFC are considered to have been implicitly rejected by the ALJ. *McVay v. Colvin*, 2015 WL 5032045, at *6 (M.D. Ala. Aug. 25, 2015) ("[T]he ALJ explained why [the physician's] opinion was given only 'some weight,' and thus, to the extent portions of his opinion were not consistent with the RFC, the ALJ implicitly rejected those portions of the opinion."). Dr. McDowell's opinion that Terry would miss approximately two days per month is not included in Terry's RFC; therefore, that portion of Dr. McDowell's opinion was implicitly rejected by the ALJ. And because there is no requirement that an ALJ address all portions of a medical opinion (including one that has been afforded little weight) when formulating an RFC, the undersigned finds that the ALJ did not err by omitting Dr. McDowell's absenteeism limitation in Terry's RFC or by failing to explain why the limitation was not included.

---

[5] For applications filed prior to March 27, 2017, like the one here, an ALJ must assign a weight to a physician's opinion and articulate the reasons for discounting the opinion. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Generally, the treating physician's opinion must be afforded controlling or substantial weight unless the ALJ shows "good cause" for discounting the opinion. *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241.

Here, Terry does not argue that the ALJ erred in discounting Dr. McDowell's opinion; nonetheless, the undersigned finds that substantial evidence supports the ALJ's decision to do so. In affording the opinion "little weight," the ALJ noted inconsistencies in the form Dr. McDowell completed. Specifically, the ALJ noted that Dr. McDowell determined that Terry could "rarely remember simple instructions yet can occasionally remember detailed instructions" and that Terry "can frequently work in coordination with others and interact with the public, yet can only occasionally maintain socially appropriate behavior." Tr. 28. The ALJ stated that these inconsistencies were of such significance that she was unsure if Dr. McDowell understood the questions or paid attention to the form she was completing. Tr. 28. These inconsistencies provide the requisite good cause for discounting Dr. McDowell's opinion.

Terry also contends that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to address her medical records suggesting that she would be absent from work due to hospitalizations and scheduled treatments. Pl.'s Br. (Doc. 19) p. 18. However, the ALJ's decision shows that she considered the medical evidence as a whole, including the evidence cited by Terry. Indeed, the ALJ noted Terry's February 2016, July 2016, and September 2016 acute hospitalizations, which were for treatment of asthma exacerbation, gastric sleeve surgery, and renal stones with UTI, respectively. Tr. 26-28. Additionally, the ALJ discussed Terry's mental impairments (which improved with treatment) and bladder cancer (which resolved),[6] and pointed to the records pertaining to the multiple psychotherapy and cancer treatments she received for those impairments. Tr. 26, 28. Of course, the ALJ did not explicitly note the number of times Terry reported for treatments, nor did she specifically discuss each treatment record. But the ALJ's failure to do so is not error, nor does it mean that the ALJ ignored the evidence of Terry's treatments or failed to consider their effects when formulating the RFC.

Further, Terry's cited medical records do not undermine the ALJ's decision to omit an absenteeism limitation in the RFC. The medical evidence upon which Terry relies includes hospitalizations for acute asthma symptoms, obesity, and renal stones, as well as scheduled psychotherapy appointments and treatments for her bladder cancer. Pl.'s Br. (Doc. 19) p. 18. Importantly, an RFC determination considers "only functional limitations

---

[6] Tr. 26 ("Additional treatment notes show that the claimant is cancer free with a 'history of bladder cancer.'").

and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of related symptoms." *Cherkaoui v. Comm'r of Soc. Sec.*, 678 F. App'x 902, 904 (11th Cir. 2017). The number of medical appointments attended is *not* a functional limitation caused by a claimant's impairments that affects physical or mental capabilities.[7] *Id.* ("[W]hether the number of medical appointments affects her ability to work is not an appropriate consideration for assessing her [RFC] because that determination considers only the functional limitations and restrictions resulting from medically determinable impairments."). Of course, an ALJ must still consider the effects of a claimant's treatment in conjunction with the other evidence of record, including any restrictions imposed by the mechanics of treatment. *See Palencia v. Saul*, 2020 WL 5742981, at *8 (M.D. Fla. Sept. 25, 2020); *Gordon v. Saul*, 2019 WL 4254470, at *3 (M.D. Fla. Sept. 9, 2019) ("[A]bsenteeism from work resulting from a plaintiff's need for treatment may constitute evidence that such plaintiff is unable to perform work activity on a regular and continuing basis or on an equivalent schedule.").

Here, the ALJ considered the length and nature of Terry's treatments to the extent required by the regulations. "Nothing in the record indicates that [Terry's acute] hospitalizations were expected to recur with such frequency so as to limit [Terry's] ability to perform work activity on a regular and continuing basis." *See Gordon*, 2019 WL 4254470, at *4. Similarly, "nothing in the record indicates that [Terry] was required, or

---

[7] Courts have treated acute hospitalizations as medical appointments. *See Delon v. Comm'r of Soc. Sec.*, 2021 WL 6011104, at *7-8 (M.D. Fla. Nov. 15, 2021) (treating the plaintiff's numerous hospitalizations as medical appointments that did not affect the RFC determination).

10

would be required, to schedule her medical appointments during working hours so that they would interfere with her ability to obtain work." *See Cherkaoui*, 678 F. App'x at 904. As such, the Court finds that the ALJ did not err by failing to specifically address how Terry's hospitalizations and treatments might affect her work attendance.

### B. The ALJ Properly Applied the Three-Part Pain Standard

Terry argues that the ALJ failed to articulate sufficient reasons for discrediting her pain testimony. Pl.'s Br. (Doc. 19) p. 21. Pain alone can render a person disabled even where its existence is not supported by objective evidence. *Whitmore v. Soc. Sec. Admin., Comm'r*, 855 F. App'x 641, 643 (11th Cir. 2021) (citing *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). Thus, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Id.* (internal quotations omitted) (citing *Foote*, 67 F.3d at 1561). "A claimant attempting to establish disability through [her] own testimony of subjective symptoms must show: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Id.* (internal quotations omitted) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002)); 20 C.F.R. § 404.1529).

When the medical signs or laboratory findings document a medically determinable impairment that could reasonably be expected to produce the pain alleged, the Commissioner must then evaluate the intensity and persistence of a claimant's pain to

determine how it limits the claimant's capacity for work. 20 C.F.R. § 404.1529(c). In evaluating the intensity and persistence of a claimant's pain, the ALJ considers all of the available evidence, including the claimant's statements, the type and effectiveness of any treatments, and daily activities. 20 C.F.R § 404.1529(c). If an ALJ rejects a claimant's subjective testimony, the ALJ must provide explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225. If the ALJ fails to articulate reasons for discrediting subjective testimony, the court is required, as a matter of law, to accept the testimony as true. *Id.* However, a reviewing court will not disturb a clearly articulated finding about subjective complaints that is supported by substantial evidence. *Foote*, 67 F.3d at 1562.

Here, the ALJ noted that Terry testified that she has shoulder pain associated with a 2018 injury and a history of back pain.[8] Tr. 24. The ALJ found that Terry had medically determinable impairments that could be reasonably expected to cause some of her symptoms. Tr. 24. However, the ALJ discredited Terry's testimony regarding the intensity, persistence, and limiting effects of those symptoms because of inconsistencies between her testimony and the evidence in the record. Tr. 24. The ALJ noted, *inter alia*, that Terry received little to no treatment for back pain from 2014-2019, and that she did not require

---

[8] Terry also testified that she has depression, congestive heart failure, cardiomyopathy, asthma, problems with her intestines, and brain fog that would preclude her from working. Tr. 174. Notably, she also testified that she is not taking heart medications or blood pressure medications, Tr. 174; that the medications she takes for OCD, depression, and her GI symptoms are helpful, Tr. 175; that her asthma is somewhat under control and tolerable, Tr. 175; that her pain medication is helpful when she is able to take them, Tr. 175; that therapy and counseling help with her OCD and depression, Tr. 176; that resting and heating pads help her back pain, Tr. 177; that if she misses a does of medication, her reflux disease bothers her, Tr. 177; and that she has diarrhea two or three times per week, Tr. 178. The ALJ generally described these conditions and noted the treatments for them were conservative and successful. Tr. 24-28.

significant follow-up to her shoulder surgery. Tr. 24. The ALJ also noted that Terry received conservative treatment, including physical therapy, for her conditions and that those treatments were effective. Tr. 24. Further, the ALJ noted that throughout her medical history, Terry "described her pain as 0/10" and she had normal muscle tone, strength, extremities movement, gait and station, and reflexes. Tr. 24. Additionally, the ALJ noted that Terry's daily activities—which included performing all housework, running errands, taking care of the children, cooking, etc.—were contrary to her claims of disabling symptoms. Tr. 27-28. Terry's generally conservative treatment, her positive response to treatments, and her daily activities provided the ALJ with sufficient reasons to discount her pain testimony. As such, the substantial evidence supports the ALJ's determination.

## V. CONCLUSION

For the reasons explained above, the undersigned finds that substantial evidences supports the Commissioner's decision. Therefore, the decision is AFFIRMED. A separate judgment will issue.

DONE this 16th day of September, 2022.

Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE